UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Creative Photographers Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Girard Entertainment & Media LLC, et al.,<br><br>Defendants. | Civil Action No.: 1:21-cv-09398-JSR |

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY ADJUDICATION

## TABLE OF CONTENTS

I. INTRODUCTION.......................................................................................................1

II. STATEMENT OF FACTS……………………………………………………………..1

III. LEGAL STANDARD……………………………………………………………………..4

IV. ARGUMENT…………………………………………………………………………...4

A. CPI is the beneficial owner of exclusive rights in the Subject Photographs…………………………………………………………………..5

B. Defendants copied the Subject Photographs without consent…………………….6

C. Girard is willful in his individual capacity………………………………………..6

D. Defendants' infringement was willful……………………………………………8

V. SUMMARY ADJUDICATION IS PROPER……………………………………………12

## TABLE OF AUTHORITIES

Page(s)

Cases

*Arista Records LLC v. Lime Group LLC*,
715 F.Supp.2d 481, 2010 WL 2291485 (S.D.N.Y. May 25, 2010) ............ 7
*Basic Books, Inc. v. Kinko's Graphics Corp.*,
758 F.Supp. 1522 (S.D.N.Y.1991) ............ 9
*Beastie Boys v. Monster Energy Co.*,
66 F. Supp. 3d 424 (S.D.N.Y. 2014) ............ 11
*Bell v. Wilmott Storage Servs., LLC*,
12 F.4th 1065 (9th Cir. 2021) ............ 2
*Beyer v. Cty. of Nassau*,
524 F.3d 160 (2d Cir. 2008) ............ 4
*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
196 F. Supp. 3d 395 (S.D.N.Y. 2016) ............ 10
*Capitol Recs., LLC v. ReDigi Inc.*,
934 F. Supp. 2d 640 (S.D.N.Y. 2013) ............ 5
*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998) ............ 6
*Davis v. Blige*,
505 F.3d 90 (2d Cir. 2007) ............ 5
*Design Tex Group v. U.S. Vinyl Mfg. Corp.*,
2005 WL 2063819 (S.D.N.Y. Aug. 24, 2005) ............ 8
*Fallaci v. New Gazette Literary Corp.*,
568 F. Supp. 1172 (S.D.N.Y. 1983) ............ 11
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340, 111 S.Ct. 1282 (1991) ............ 5
*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
696 F.Supp.2d 368 (S.D.N.Y.2010) ............ 9
*Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*,
507 F. App'x 26 (2d Cir. 2013) ............ 9
*Fitzgerald Pub. Co. v. Baylor Pub. Co.*,
807 F.2d 1110 (2d Cir.1986) ............ 9, 10
*Forties B LLC v. Am. W. Satellite, Inc.*,
725 F. Supp. 2d 428 (S.D.N.Y. 2010) ............ 6, 7, 8
*Gallo v. Prudential Residential Servs., Ltd. P'ship*,
22 F.3d 1219 (2d Cir. 1994) ............ 4
*Guilbert v. Gardner*,
480 F.3d 140 (2d Cir. 2007) ............ 4
*H.M. Kolbe Co. v. Shaff*,
240 F.Supp. 588 (S.D.N.Y.1965) ............ 7
*Hamil Am. Inc. v. GFI*,
193 F.3d 92 (2d Cir. 1999) ............ 6

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*,
413 F.3d 257 (2d Cir.2005) ........ 9
*Mint, Inc. v. Amad*,
2011 WL 1792570 (S.D.N.Y. May 9, 2011) ........ 6
*MGM Studios Inc. v. Grokster*,
545 U.S. 913, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) ........ 7
*New York v. United Parcel Serv., Inc.*,
253 F. Supp. 3d 583 (S.D.N.Y. 2017) ........ 9
*Peer In''l Corp. v. Luna Records, Inc.*,
887 F.Supp. 560 (S.D.N.Y.1995) ........ 8, 11, 12
*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
118 F.3d 955 (2d Cir.1997) ........ 7
*Sw. Bell Tel. Co. v. Nationwide Indep. Directory Serv., Inc.*,
371 F.Supp. 900 (D.Ark.1974) ........ 8
*Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*,
778 F.2d 89 (2d Cir.1985) ........ 9
*U.S. Media Corp. v. Edde Entm't Corp.*,
1998 WL 401532 (S.D.N.Y. July 17, 1998) ........ 8
*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) ........ 9
*Yi Fu Chen v. Spring Tailor, LLC*,
2015 WL 3953532 (S.D.N.Y. June 29, 2015) ........ 4
*Yurman Design, Inc. v. PAJ, Inc.*,
262 F.3d 101 (2d Cir.2001) ........ 11

Statutes

17 U.S.C. § 101 ........ 5
17 U.S.C. § 501(b) ........ 5, 6
17 U.S.C § 106 ........ 1
17 U.S.C. § 106(1), (3)-(5) ........ 5

Rules

Fed. R. Civ. P. 56(a) ........ 4

# MEMORANDUM OF LAW IN SUPPORT OF MOTION

## I. INTRODUCTION

Defendants Girard Entertainment & Media LLC ("GEM") and Keith Girard ("Girard") (collectively, "Defendants") committed willful copyright infringement by displaying and distributing original photography on its advertisement-saturated website, in violation of Plaintiff Creative Photographers, Inc.'s ("CPI") sole and exclusive distribution rights under 17 USC 106. And this infringement was willful because Defendant, inter alia, continued for months after this lawsuit was filed and indeed up until the date of the filing of this motion. Summary adjudication of the issues of liability and willfulness are appropriate.

## II. STATEMENT OF FACTS

CPI is a premier photographic syndication, licensing, and sales company based in New York, and it distributes to media outlets and publications photographs of models and celebrities created by internationally renowned photographers. Plaintiff's Statement of Undisputed Material Facts ("SUF") 1. By virtue of its contracts with its photographers, CPI is the sole and exclusive distributor for the photographers' works. SUF 2. This case involves Defendants' unauthorized reproduction, distribution, and display of ten (10) photographs, including six of Jenna Dewan created by Jeff Lipsky ("Lipsky") for display in *Health Magazine,* two of Jessica Alba created by Matthias Vriens McGrath ("McGrath") for display in *Entertainment Weekly,* one of Gillian Anderson for display in *New Beauty* and one of Jennifer Aniston both created by Ruven Afanador ("Afanador") for display in *The Hollywood Reporter* (the "Subject Photographs"). SUF 3. At all relevant times the aforementioned photographers owned the copyrights in the Subject Photographs and each of them entered into exclusive distribution and agency agreements with CPI ("Agreements"). SUF 4. The Agreements established that CPI had the sole right to distribute, license, and sell the Subject Photographs to third parties, and establishes that CPI has,

at all times relevant to this action, been the exclusive administrator and of the copyright rights in and to the Subject Photography. SUF 5.

Defendants run a series of websites, each of which is populated by low-quality content and photographs copied from third parties. Defendants concede that they possess no written authorization to use any of the Subject Photographs, yet they published them on multiple pages and have refused to remove them from the Defendants' publicly available URLs (or web links) *even up to the date of this filing*.[1]

This is the second time that CPI has had to bring suit against Girard for copyright infringement. Girard is the principle of online publisher TheImproper Network LLC, who was likewise sued in September 2019 for similar infringing conduct in an action in the Southern District of New York styled *Creative Photographers, Inc. v. TheImproper Network LLC,* Case No. 1:19-cv-08631-PKC. SUF 7. Defendants own, operate, and are solely responsible for the content posted to the website www.celebrityhealthfitness.com (the "Website"). SUF 8. Defendants, after copying the Subject Photographs from third party sites and social media platforms like Instagram, displayed and published CPI's proprietary Subject Photographs as key

---

[1] One of the Subject Photographs is still live and available to the public on GEM's primary website and multiple others are still live and available to the public through GEM's server or "static image" pages. SUF 6. Distributing the server or "static images" pages to the public is infringement even though the image does not appear on a site's main page. See *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1073 (9th Cir. 2021)(infringement occurred because the infringer's "server transmitted the [photo' to any member of the public who used the pinpoint address or a reverse image search.")

visual art for articles that they displayed on, and distributed through, their websites, with each article surrounded by commercial advertising (the "Infringing Uses"). SUF 9.

Defendants have not produced any evidence to establish that they conducted due diligence or even an inquiry into ownership or copyright information for any of the Subject Photographs before exploiting them on the Website. SUF 10. Defendants have not proffered any evidence that they obtained a license from CPI, the respective photographers, or any other party that authorized them to display the Subject Photographs on the Website. SUF 11. Defendants have likewise provided no evidence to support any of their affirmative defenses. SUF 12. Indeed, as of the date of this filing, which is CPI's deadline to file its dispositive motion, Defendants have not produced a *single* document in discovery.[2] SUF 13.

Defendant Girard is the sole owner and publisher of GEM and the only current employee. At one time he employed a freelancer, but that individual is no longer with the company. Girard oversaw the selection and use of all photographs on the Website and even wrote at least one of the articles that comprises Infringing Uses.

GEM did not exist until 2019, when it was formed with the New York Secretary of State. SUF 14. GEM apparently began distributing the Infringing uses in 2019. On August 25, 2021, CPI's counsel sent to Defendants a cease-and-desist demand regarding the Infringing Uses. SUF 15. Defendants claimed that he infringement claims were fraudulent did not remove the Subject Photographs from their site at or around this time. SUF 16.

---

[2] After business hours on March 29, 2022, as this Motion was being prepared for filing, Defendants made its first document production – a smattering of documents, none of which appear to relate to the Subject Photographs or Infringing Uses.

This case was filed on November 13, 2021. See Dkt. #1. Despite the clear evidence of copying set forth in the demand letter and the Complaint, and the protestations of CPI, Defendants have *still* refused to remove all of the Subject Photographs from their Website. As of March 29, 2022, the date of the filing of this motion, several Subject Photographs incorporated in the Infringing Uses were still available to the public on Defendants' website. SUF 18.

## III. LEGAL STANDARD

The Court may summarily adjudicate issues where "there is no genuine dispute as to any material fact" and that a party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008), citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007). Thus, when "no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted). And "that opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment" unless it "lead[s] to a different legal outcome." *Yi Fu Chen v. Spring Tailor, LLC*, 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (citation omitted). When presented with the undisputed facts in this case no rational jury could find in favor of defendants. This motion should be granted.

## IV. ARGUMENT

Defendants committed copyright infringement when they exploited the Subject Photographs without consent as key art for the Infringing Uses. To establish infringement, CPI can and will prove the two required elements: "(1) ownership of a valid copyright, and (2)

copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991).

**A. CPI is the beneficial owner of exclusive rights in the Subject Photographs**

As to the first element, CPI has standing to bring this action. Section 501(b) provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. 501(b). And Section 106 of the Copyright Act grants "the owner of copyright under this title" certain "exclusive rights," including the right "to *distribute* copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership[.]" *Capitol Recs., LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 648 (S.D.N.Y. 2013), aff'd, 910 F.3d 649 (2d Cir. 2018)(emphasis added), citing 17 U.S.C. §§ 106(1), (3)-(5). As noted above, CPI holds exclusive licenses from the photographers and, per its agreements with the photographers, is the beneficial owner of the distribution rights in the Subject Photographs.

Exclusive licenses grant to the licensee the exclusive right—superior even to copyright owners' rights—to use the copyrighted material in a manner as specified by the license agreement. *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007). Exclusive licenses are recognized as a type of an ownership interest, conveying a particular exclusive right of copyright. *Id.* at fn. 10, citing 17 U.S.C. § 101 ("'Copyright owner', with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right."). Exclusive licensees may sue for infringement without joining the copyright owners. 17 U.S.C. § 501(b).

CPI's exclusive licenses cover the Subject Photographs and their copyrights, and CPI has produced registration certificates for the Subject Photographs. A "certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership

of a copyright." *Mint, Inc. v. Amad*, 2011 WL 1792570, at *2, quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999). The applicable copyright registrations identify CPI in the Rights and Permissions section. SUF 19. Each artist has an exclusive license and distribution agreement with CPI granting CPI an ownership interest in Subject Photographs and their copyrights. SUF 20. CPI satisfies this prong.

**B. Defendants copied the Subject Photographs without consent**

The second element is also satisfied because CPI has established that Defendants accessed and "actually copied" the Subject Photographs. *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). And Defendants' copying was unlawful given that "substantial similarity" exists between the Subject Photographs incorporated in Defendants' Infringing Uses and the "protectable elements" of the Subject Photographs. Id. A comparison of the Subject Photographs with the relevant pages from the Website makes clear that Defendants published identical copies of the Subject Photographs that captured their lighting, angle, composition, and all other creative aspects. SUF 21.This prong is met and Defendants are liable for infringement.

**C. Girard is willful in his individual capacity**

Girard, the sole owner, publisher, and principal of GEM, is also individually liable for the infringement at issue. His "liability in his capacity as principal of" GEM arises under at least two theories: "(1) direct infringement," and "vicarious infringement." *Forties B LLC v. Am. W. Satellite, Inc.*, 725 F. Supp. 2d 428, 436 (S.D.N.Y. 2010)(Rakoff, J.). Girard, who authored one of the Infringing Uses, selected photographs for the Website, and oversaw the publication of each of the Infringing Uses, personally participated in the infringing copying, distribution, and display at issue, and is thus directly liable. Id. citing, *H.M. Kolbe Co. v. Shaff*, 240 F.Supp. 588, 589–90 (S.D.N.Y.1965) ("Officers or directors of a corporation found guilty of infringement are

individually liable if they personally participated in the acts constituting infringement.") (remaining citations omitted).

Girard is also vicariously liable for the infringement. "A defendant is liable for vicarious copyright infringement if it 'profit[s] from direct infringement while declining to exercise a right to stop or limit it.'" Id. citing *Arista Records LLC v. Lime Group LLC*, 715 F.Supp.2d 481, 518, 2010 WL 2291485, at *24 (S.D.N.Y. May 25, 2010) (alteration in original), quoting *MGM Studios Inc. v. Grokster*, 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005)). Thus to "prove vicarious liability for copyright infringement, the plaintiff must show that the defendant had a "right and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the exploitation of copyrighted materials." Id, *citing Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc*., 118 F.3d 955, 971 (2d Cir.1997) (alterations in original) (internal quotation marks omitted).

As the sole owner and overseer of the content on the Website, Girard had the right to supervise same. Indeed, aside from one freelancer, he created and was responsible for all of the content on the Website, including at least one of the articles at issue in this case. Because all content on the Website is created and published under Girard's "supervision, it cannot be disputed" that Girard had a "right and ability to supervise." *Forties B LLC*, 725 F. Supp. 2d at 436.

Here, Girard, as the sole owner of GEM, is the only person who benefited financially from the infringement because he received advertising revenues from the advertising that he sold or obtained from affiliates and displayed on the Website. This establishes vicarious liability. Indeed, "a number of cases have imposed such liability where, as here, the defendant is the controlling principal of a corporation that committed infringing acts. Id., citing, e.g., *Design Tex Group v. U.S. Vinyl Mfg. Corp*., 2005 WL 2063819, at *4 n. 6, 2005 U.S. Dist. LEXIS 18276, at

*13 n. 6 (S.D.N.Y. Aug. 24, 2005) ("There can be no serious question that [a defendant who was president and sole owner (with his wife) of a small company] had a financial interest in the infringing activity."); *U.S. Media Corp. v. Edde Entm't Corp*., 1998 WL 401532, at *7 (S.D.N.Y. July 17, 1998) ("It is ... apparent that [a defendant who was a 50% shareholder and in charge of determining film purchases] had the 'right and ability to supervise' and, as the dominant shareholder, had a direct financial interest in the company's 'exploitation of copyrighted materials.' "); *Peer In''l Corp. v. Luna Records, Inc*., 887 F.Supp. 560, 565 (S.D.N.Y.1995) (imposing vicarious liability on defendant who was corporation's sole shareholder and director); see also *Sw. Bell Tel. Co. v. Nationwide Indep. Directory Serv., Inc*., 371 F.Supp. 900, 907 (D.Ark.1974) ("Officers or directors of a corporation guilty of infringement are individually liable if personally participating in the acts constituting infringement *or if they are sole shareholders*.") (emphasis added by Court). Here, Girard was the sole owner of GEM and participated directly in the infringement at issue and financially benefitted from same. As such, he is vicariously liable for the infringement.

Girard is liable for the infringement at issue, both directly and vicariously.

**D. Defendants' infringement was willful**

Defendants' infringement was willful.[3] The Second Circuit defines "willfulness" to mean "(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Island Software & Computer Serv., Inc.,* 413 F.3d at 263. Willfulness may also be found even when an infringer had only "constructive knowledge" of the infringement, *Fitzgerald Pub.*

[3] Willfulness may be established on summary judgment, so long as the court draws all reasonable inferences in the defendant's favor. See, e.g., *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc*., 507 F. App'x 26, 31 (2d Cir. 2013); see also *Island Software & Computer Serv., Inc. v. Microsoft Corp*., 413 F.3d 257, 263-264 (2d Cir.2005).

*Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir.1986); "should have known" that his actions constituted infringement, *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1543 (S.D.N.Y.1991), or "fail[ed] to investigate because [he] was afraid of what the inquiry would yield[.]" *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F.Supp.2d 368, 393 (S.D.N.Y.2010). Here, at a minimum, Defendants recklessly disregarded CPI's rights, had constructive knowledge of its infringement, should have known its conduct was infringing, and "failed to investigate" the true authorship and ownership of the Subject Photographs.

And "reckless disregard" should be based on the knowledge and experience of Defendant GEM as an entity, as the general rule in the Second Circuit is that "[a] corporation[4] is considered to have acquired the collective knowledge of its employees." *New York v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 670 (S.D.N.Y. 2017) (Forrest, J.).[5] Finally, as courts in this district have acknowledged, "a court need not find that an infringer acted maliciously to find willful infringement." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 411 (S.D.N.Y. 2016), citing *Fitzgerald Pub. Co.*, 807 F.2d at 1115 (remaining citations omitted).

Here, Defendants knew that they did not create the Subject Photographs or hold licenses from the creators. While they claim that unnamed third parties provided the necessary consents, they have provided no evidence of same and admitted that they destroyed any records that might have reflected such licenses.

---

[4] When, as here, the defendant is a corporation, it is liable for acts of willful infringement committed by its employees within the scope of their employment or for its benefit. See *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir.1985)(citation omitted).

[5]GEM is chargeable with the knowledge that a commercial publication cannot misappropriate the creative work of others without consent. See *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017) ("a party may act recklessly by refusing, as a matter of policy, to even investigate or attempt to determine whether particular [works] are subject to copyright protections.").

Defendants are chargeable with the knowledge that CPI had the exclusive right to license the Subject Photographs because the publicly available copyright registrations reflect CPI's contact information for rights. SUF 22. Further, Defendants have presented no evidence they even attempted to obtain a license or permission to use the Subject Photographs, there has also been no evidence presented that Defendants could reasonable concluded permission was not necessary. SUF 23. Further, in 2019 Girard learned of the consequences of unlawfully exploiting another's work without consent when CPI initiated a lawsuit against another entity owned by him TheImproper Network, LLC. *Creative Photographers, Inc. v. TheImproper Network LLC,* Case No. 1:19-cv-08631-PKC. SUF 24.

Defendants published and displayed the Subject Photographs with knowledge that it had failed to gain anyone's consent. SUF 25. And it benefitted from its willful infringement in the form of increased advertising revenue and page views as evidenced by the copious amount of advertisements visible on the exemplars of Defendants' infringement. SUF 26. This was, at the very least, "reckless disregard" for the artist's rights and "willful blindness" to the infringement.

And Defendants have produced no evidence that they conducted any due diligence or analysis before publishing the infringing content, and this "failure to investigate the possibility of intellectual property violations" suffices for a finding of infringement, especially when considered in concert with the other indicia of willfulness set forth herein. *Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 442 (S.D.N.Y. 2014), citing *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113 (2d Cir.2001) (finding willful infringement based on defendant's failure to investigate).

As a separate basis for willfulness, Defendants *continued* to display and distribute, in violation of the Copyright Act, the Subject Photographs for an unreasonable amount of time after receiving notice of the infringement. Indeed, Defendants continue do display many of the

Subject Photographs even as of the date of this filing. Courts do not hesitate to find willful infringement when the infringer "continued to [infringe], even some several months after this action was commenced." *Peer Int'l Corp. v. Luna Recs., Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995). This is particularly true where, as here, the infringer is in the business of publishing content. See *Fallaci v. New Gazette Literary Corp*., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)("as the publisher of a copyrighted newspaper, the defendant was or should have been aware that its unauthorized republication of a Washington Post article constituted copyright infringement.").

CPI provided notice of the instant infringement to Defendants through cease-and-desist correspondence on August 25, 2021. And it is undisputed that this lawsuit was filed on November 13, 2021. Yet, as of March 29, 2022, Defendants have not removed the Subject Photographs from their website, months after CPI initiated this lawsuit. SUF 27. Thus, Defendants "continued to [infringe], even some several months after this action was commenced." *Peer Int'l Corp.*, 887 F. Supp. 560, 568. This is willful.

//

//

//

//

## V. SUMMARY ADJUDICATION IS PROPER

CPI exists to support artists and ensure that they are compensated for the use of their work. Defendants have exploited those artists and their creative output to build a valuable network of websites and sell advertising. And they did so without the consent of, or even notice to, the photographers. Defendants have willfully violated CPI's copyrights and persisted in its infringement to this day. It is respectfully submitted that Defendants should be adjudged liable for copyright infringement and willful infringement and the case should proceed to trial solely on the issue of damages.

Respectfully submitted,

Dated: March 29, 2022
New York, New York

By: *<u>/s/ Scott Alan Burroughs</u>*

Scott Alan Burroughs, Esq.
Laura M. Zaharia, Esq.
DONIGER / BURROUGHS
247 Water Street, First Floor
New York, New York 10038
(310) 590-1820
*Attorneys for Plaintiff*